**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| ANDREW PERRONG, individually and on behalf of all those similarly situated, | Case No. 2:21-cv-00883-JLB-NPM |
| Plaintiff, | |
| v. | |
| ALL AMERICAN POWER AND GAS PA, LLC, | |
| Defendant. | |

**DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................1

II.     FTSA BACKGROUND .............................................................4

III.    APPLICABLE LEGAL STANDARD .......................................5

IV.     ARGUMENT................................................................................6

      A.      THE FAC SHOULD BE DISMISSED BECAUSE THE FTSA
           IS UNCONSTITUTIONAL ...............................................6

          1.      The FTSA Employs a Content-Based Restriction of
              Speech and Therefore is Subject to Strict Scrutiny
              Review.................................................................6

              a.      Section 8(a)'s Content-Based Speech Restriction
                  Fails "Strict Scrutiny" Review ......................10

              b.      Section 8(a) Also Does Not Survive "Intermediate
                  Scrutiny" Review.........................................14

      B.      THE FAC SHOULD ALSO BE DISMISSED BECAUSE THE
           FTSA IS UNCONSTITUTIONALLY VAGUE...............15

      C.      THE FAC SHOULD ALSO BE DISMISSED BECAUSE THE
           FTSA VIOLATES THE COMMERCE CLAUSE ...........17

      D.      THE FAC SHOULD ALSO BE DISMISSED FOR FAILURE
           TO STATE A CAUSE OF ACTION................................21

      E.      THE COURT'S DISMISSAL SHOULD BE WITH
           PREJUDICE .......................................................25

V.      CONCLUSION..........................................................................25

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anyaebunam v. ARS Account Resolution, LLC, et al.*,
2021 WL 4775146 (D.N.J. Oct. 13, 2021) ........................................................24

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,
131 S.Ct. 2806 (2011)........................................................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................5

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S.Ct. 2335 (2020)..................................................................................passim

*Barry v. Ally Fin., Inc.*,
2021 WL 2936636 (E.D. Mich. July 13, 2021)..................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................5

*Bonanno v. New Penn Fin.*,
2017 WL 3219517 (M.D. Fla. July 28, 2017) ....................................................22

*Bonavista Condo. Ass'n, Inc. v. Bystrom*,
520 So.2d 84 (Fla. 3d DCA 1988) ......................................................................15

*Booth v. Appstack, Inc.*,
2015 WL 1466247 (W.D. Wash. Mar. 30, 2015)................................................20

*Borden v. eFinancial, LLC*,
2021 WL 3602479 (W.D. Wash. Aug. 13, 2021)................................................25

*Cafe Erotica v. Fla. Dep't of Transp.*,
830 So.2d 181 (Fla. 1st DCA 2002) .....................................................................9

*Cahaly v. Larosa*,
796 F.3d 399 (4th Cir. 2015) (South Carolina statute unconstitutional)....2, 9, 13

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)............................................................................................14

*Chaparro v. Carnival Corp.*,
693 F.3d 1333 (11th Cir.2012) ...........................................................................22

# TABLE OF AUTHORITIES
(continued)

**Page**

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) .................................................................................. 11

*City Council of L.A. v. Taxpayers for Vincent*,
466 U.S. 789 (1984) .................................................................................. 12

*Creasy v. Charter Commc'ns, Inc.*,
489 F. Supp. 3d 499 (E.D. La. 2020) ......................................................... 6

*Davila v. Delta Air Lines, Inc.*,
326 F.3d 1183 (11th Cir. 2003) .................................................................. 6

*Dep't of Educ. v. Lewis*,
416 So.2d 455 (Fla. 1982) .......................................................................... 6

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982) .................................................................................. 18

*Facebook v. Duguid*,
141 S. Ct. 1163 (2021) ........................................................................ 23, 24

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .................................................................................. 16

*FF Cosms. FL, Inc. v. City of Miami Beach*,
866 F.3d 1290 (11th Cir. 2017) ................................................................ 14

*Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*,
703 F.3d 1230 (11th Cir. 2012) ................................................................ 18

*Fleming v. Diversified Consultants, Inc.*,
2014 WL 6747150 (M.D. Fla. Nov. 26, 2014) .......................................... 22

*Frisby v. Shultz*,
487 U.S. 474 (1988) .................................................................................. 12

*GeorgiaCarry.Org, Inc. v. Georgia*,
687 F.3d 1244 (11th Cir. 2012) .................................................................. 6

*Gill v. Navient Sols., LLC*,
2018 WL 7412717 (M.D. Fla. Aug. 7, 2018) ............................................ 22

*Glasser v. Hilton Grand Vacations Co., LLC.*,
341 F. Supp. 3d 1305 (M.D. Fla. 2018) .................................................... 24

# TABLE OF AUTHORITIES
(continued)

**Page**

*Glasser v. Hilton Grand Vacations Co., LLC*,
   948 F.3d 1301 (11th Cir. 2020) ...........................................................24

*Gresham v. Rutledge*,
   198 F. Supp. 3d 965 (E.D. Ark. 2016)..................................2, 9, 10, 13

*Gross v. GG Homes, Inc.*,
   2021 WL 4804464 (S.D. Cal. Oct. 14, 2021)......................................24

*Guglielmo v. CVS Pharmacy, Inc.*,
   2021 WL 3291532 (D. Conn. Aug. 2, 2021).........................................24

*Harris v. Mex. Specialty Foods, Inc.*,
   564 F.3d 1301 (11th Cir. 2009) ......................................................6, 21

*Healy v. Beer Inst., Inc.*,
   491 U.S. 324 (1989).............................................................................18

*Hunter v. Diversified Consultants, Inc.*,
   2014 WL 6747153 (M.D. Fla. Nov. 26, 2014)....................................22

*Jaggars v. City of Sheffield, Ala.*,
   2014 WL 2123210 (N.D. Ala. May 21, 2014) .......................................5

*Johnson v. United States*,
   576 U.S. 591 (2015)......................................................................15, 16

*Kolender v. Lawson*,
   461 U.S. 352 (1983).............................................................................16

*Larios v. Perdue*,
   306 F. Supp. 2d 1190 (N.D. Ga. 2003)..................................................6

*Martin v. Allied Interstate, LLC*,
   2016 WL 3619684 (S.D. Fla. June 17, 2016).......................................24

*Martinolich v. Golden Leaf Mgmt., Inc.*,
   786 So.2d 613 (Fla. 3d DCA 2001)......................................................21

*McGinity v. Tracfone Wireless, Inc.*,
   5 F. Supp. 3d 1337 (M.D. Fla. 2014)...................................................22

*Police Dept. of Chicago v. Mosley*,
   408 U.S. 92 (1972).................................................................................6

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Pozo v. Stellar Recovery Collection Agency, Inc.*,
  2016 WL 7851415 (M.D. Fla. Sept. 2, 2016)....................................24

*Reed v. Town of Gilbert, Ariz.*,
  576 U.S. 155 (2015)..................................................................passim

*Samataro, et al. v. Keller Williams Realty, Inc., et al.*,
  2021 WL 4927422 (W.D. Tex. Sept. 27, 2021) ................................24

*Silberman v. Miami Dade Transit*,
  927 F.3d 1123 (11th Cir. 2019) ....................................................25

*Speidel v. JP Morgan Chase & Co.*,
  2014 WL 582881 (M.D. Fla. Feb. 13, 2014)....................................22

*SpoofCard, LLC v. Burgum*,
  499 F. Supp. 3d 647 (D.N.D. 2020)................................................19

*State v. Weeks*,
  202 So. 3d 1 (Fla. 2016) ..............................................................23

*Tehrani v. Joie De Vivre Hospitality, LLC*,
  2021 WL 3886043 (N.D. Cal. Aug. 31, 2021) ................................25

*TelTech Sys., Inc. v. McCollum*,
  2009 WL 10626585 (S.D. Fla. July 16, 2009) ....................18, 19, 20

*The Dream Defenders v. DeSantis*,
  2021 WL 4099437 (N.D. Fla. Sept. 9, 2021), *appeal filed*, No. 21-13489
  (11th Cir. Oct. 13, 2021)..............................................................16

*Turizo v. Jiffy Lube Int'l, Inc.*,
  2019 WL 4737696 (S.D. Fla. Sept. 27, 2019) ................................22

*W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1 (Fla. 2012) ....................23

*Weaver v. Wells Fargo Bank N.A.*,
  2015 WL 4730572 (M.D. Fla. Aug. 10, 2015)................................22

*Wilcox v. Green Tree Servicing, LLC*,
  2015 WL 2092671 (M.D. Fla. May 5, 2015) ................................24

*Wilson v. Rater8, LLC, et al.*,
  2021 WL 4865930 (S.D. Cal. Oct. 18, 2021)................................24

# TABLE OF AUTHORITIES
(continued)

**Page**

## STATUTES

815 ILCS 305/5(a) ....................................................................................17

47 U.S.C. § 227(b)(1)...................................................................................7

47 U.S.C. § 227(b)(1)(A)(iii) .....................................................................12

Fla. Stat. § 501.059 ......................................................................................4

Fla. Stat. § 501.059(1)(i).............................................................................19

Fla. Stat. § 501.059(1)(e)............................................................................19

Fla. Stat. § 501.059(1)(g)............................................................................13

Fla. Stat. § 501.059(1)(j).....................................................................5, 8, 13

Fla. Stat. § 501.059(8)(a) ....................................................................passim

Fla. Stat. § 501.059(8)(a)-(b) (2018) .........................................................16

Fla. Stat. § 501.059(8)(d)............................................................................19

N.Y. Gen. Bus. Law § 399-p(a) ..................................................................17

Wash. Rev. Code § 80.36.400(1)(a) ...........................................................17

## OTHER AUTHORITIES

47 C.F.R.§ 64.1200(f)(9) ............................................................................13

https://www.dictionary.com/browse/automate (last visited Feb. 4, 2022)..............23

https://www.dictionary.com/browse/automation (last visited Feb. 4, 2022)...........23

https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.P
DF................................................................................................................11

https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c1/PDF (last
visited Feb. 4, 2022) ..............................................................................5, 17

U.S. Const. art. I, § 8, cl. 3.....................................................................17, 18

## RULES

Fed. R. Civ. P. 12(b)(6)......................................................................passim

All American Power and Gas PA, LLC ("All American") respectfully moves to dismiss the First Amended Complaint (*see* Dkt. 18, "FAC") filed by Andrew Perrong ("Plaintiff"), <u>with prejudice</u>, under Fed. R. Civ. P. 12(b)(6), stating as follows:

## I.   <u>INTRODUCTION</u>

Rather than oppose All American's original dispositive motion (*see* Dkt. 14), Plaintiff filed his FAC. However, the FAC fails to—and indeed cannot—cure the fatal constitutional and pleading defects of its predecessor. Therefore, Plaintiff's FAC should also be dismissed for all of the same reasons as his original Complaint.

As before, Plaintiff's FAC alleges, in a conclusory fashion, that All American violated the recently amended "automated" calling restrictions of the Florida Telephone Solicitation Act—specifically, Fla. Stat. § 501.059(8)(a) (the "FTSA"), Florida's analogue to the federal Telephone Consumer Protection Act ("TCPA"). This claim still rests on four calls, only two of which Plaintiff claims to have answered, that he concludes were sent using an "automated system for the selection or dialing of telephone numbers" without his consent. However, beyond still lacking in specific non-conclusory factual support, which alone warrants its dismissal, Plaintiff's FTSA claim continues to suffer from an incurable flaw. That is, Section 8(a) of the FTSA[1]—containing new ill-defined restrictions specific only to automated "telephonic sales calls" regarding "consumer goods and services"—is facially ***unconstitutional***.

---

[1] Herein after, "Section 8(a)" unless otherwise specified.

Nothing that Plaintiff added to his FAC, or could ever add, changes this result. Thus, the FAC should be dismissed in its entirety on at least the following grounds:

**First**, Section 8(a) of the FTSA violates the First Amendment to the U.S. Constitution and Florida's coextensive speech protections. Indeed, by singling out and creating a new set of unique calling restrictions for one specific type of speech to the exclusion of all others, Section 8(a) is a content-based speech restriction. As such, it is presumptively unconstitutional and subject to a "strict scrutiny" analysis, which it cannot survive, as it is not "narrowly tailored" to serve a "compelling" state interest. In fact, before Section 8(a) took its current form, two similar state calling statutes did not survive strict scrutiny review and were deemed unconstitutional by two federal courts.[2] This Court should rule similarly here. Moreover, even if it is not subject to a rigorous "strict scrutiny" review (and it is), Section 8(a) also fails to meet the lesser "intermediate scrutiny" standard. Either way, because the FTSA is an unconstitutional speech restriction, the Court must dismiss the FAC under Rule 12(b)(6).

**Second**, Section 8(a) also violates the due process clause of the Fourteenth Amendment and Florida's equivalent protections because it is unconstitutionally vague. In fact, it broadly regulates "telephonic sales calls" made with "an automated system for the selection or dialing of phone numbers" without defining that critical

---

[2] *Gresham v. Rutledge*, 198 F. Supp. 3d 965 (E.D. Ark. 2016) (Arkansas statute unconstitutional); *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015) (South Carolina statute unconstitutional).

phrase or the key words within it, as other equivalent calling statutes do. Even the FTSA's legislative history fails to provide any indication as to what technology the legislature sought to target. Consequently, persons who might make legal "automated" calls under the TCPA now potentially face ruinous damages and exorbitant legal fees to would-be class action plaintiffs and lawyers under the new FTSA provisions with hardly any notice and without any guidance as to how to ensure compliance. These potentially ruinous consequences have a chilling effect on speech.

**Third**, the FTSA also violates the dormant Commerce Clause of the Constitution because it regulates commerce occurring wholly outside of Florida. Given the increased use of mobile phones and call forwarding, it is impossible for persons to determine whether call recipients are Florida residents or located in Florida when a call is placed. Because the FTSA presumes all calls made to Florida area codes are made to a Florida resident or to a person Florida at the time of the call, the FTSA has the practical effect of regulating calls to persons who are not actually located in Florida or do not reside in Florida. As a result, and notwithstanding Plaintiff's new conclusory and hypothetical allegations to the contrary in his FAC, callers must presume that all call recipients might be Florida residents and/or present in Florida or risk violating the FTSA. The FAC should be dismissed for this additional reason.

**Fourth**, the FAC should also be dismissed because it fails to state a plausible FTSA claim or to allege sufficient facts supporting such a claim. In this regard,

Plaintiff mostly just parrots the statutory definition regarding the supposed "automated system" purportedly used to place the at-issue calls without specific factual support. Courts evaluating claims brought under the TCPA's analogous "automated" calling provisions routinely dismiss such bald complaints at the pleadings stage for not meeting applicable pleading standards. This Court should too.

## II.   __FTSA BACKGROUND__

On June 28, 2021, Florida Senate Bill 1120, which amended the FTSA to add various new requirements relating to the use of an "automated system" to make "telephonic sales calls" to consumers, including certain written consent requirements and a private right of action, was presented to the Governor, who signed it on June 29, 2021. On July 1, 2021, the amendments went into effect, providing in part as follows:

> (8)(a)  A person may not ***make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers*** or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party.

> (10)(a)  A called party who is aggrieved by a violation of this section may bring an action to:  1. Enjoin such violation. 2. Recover actual damages or $500, whichever is greater.

> (b)  If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a).

Fla. Stat. § 501.059 (emphasis added).

The phrase "telephonic sales call" is broadly defined as "a telephone call, text message, or voicemail transmission to a ***consumer*** for the purpose of soliciting a sale of any ***consumer*** goods or services, soliciting an extension of credit for ***consumer***

goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of *consumer* goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j) (emphasis added). The statute does <u>not</u> define "an automated system for the selection or dialing of telephone numbers."  And in a tacit recognition of the new cottage industry of consumer lawsuits it created, the legislature has introduced a bill to amend (but yet still not define) the critical phrase "automated system for the selection *or* dialing of telephone numbers" to "automated system for the selection *and* dialing of telephone numbers" and would apply retroactively. *See* https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c1/PDF (last visited Feb. 4, 2022) (emphasis added). The effect of this amendment would be to markedly narrow, even retroactively, the type of equipment covered by the statute.

## III.   <u>APPLICABLE LEGAL STANDARD</u>

"[F]ederal pleading standards, including *Twombly/Iqbal*, apply to removed complaints" like Plaintiff's. *Jaggars v. City of Sheffield, Ala*., 2014 WL 2123210, at *3, n.4 (N.D. Ala. May 21, 2014) (collecting cases). In this regard, Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently plead a claim for relief. A "bare assertion" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiff must "include factual allegations for each essential

element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Where (as here) a statute upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is appropriate. *See Harris v. Mex. Specialty Foods, Inc.,* 564 F.3d 1301, 1308 (11th Cir. 2009); *Larios v. Perdue,* 306 F. Supp. 2d 1190, 1208 (N.D. Ga. 2003).[3]

## IV.   ARGUMENT

### A.   THE FAC SHOULD BE DISMISSED BECAUSE THE FTSA IS UNCONSTITUTIONAL.

#### 1.   The FTSA Employs a Content-Based Restriction of Speech and Therefore is Subject to Strict Scrutiny Review.

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015); *see also Dep't of Educ. v. Lewis*, 416 So.2d 455, 461 (Fla. 1982). This means the government generally "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (citing *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). A statute is considered "content-based" where (as here) "a regulation of speech 'on its face' draws

---

[3] *But see Creasy v. Charter Commc'ns, Inc.,* 489 F. Supp. 3d 499, 508 (E.D. La. 2020) (dismissing under Rule 12(b)(1)).

distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163. This includes a statute that "singles out specific subject matter for differential treatment." *Id*. at 169. As just one example, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Id.*

*Barr* is further instructive on this point. There, the Supreme Court held that the government-backed debt exception to the "automatic telephone dialing system" restrictions of the TCPA,[4] which permitted automated calls to collect a government debt without consent, where such calls would otherwise be unlawful under the statute, was an unconstitutional content-based restriction on free speech that was not narrowly tailored to serve a compelling interest. 140 S.Ct. at 2346-47. The Supreme Court found that a rule that differentiates between calls based on whether the call's content is to collect a government debt "is about as content-based as it gets." *Id.*

Applying these core concepts here, Section 8(a) provides "a person may not make or knowingly allow ***a telephonic sales call*** to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (emphasis added). While the FTSA does not define what this "automated system" is, which itself

---

[4] *See* 47 U.S.C. § 227(b)(1).

is an unconstitutional defect warranting dismissal (*see* Section IV.B., *infra*), a "telephonic sales call" is defined as "a telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services…." Fla. Stat. § 501.059(1)(j). On its face, therefore, whether a call violates Section 8(a) rests squarely on whether it is a "telephonic sales call" to a ***consumer about consumer*** (not commercial) ***goods or services***—*i.e.*, one specific type of call and caller. For example, a call made to a Florida consumer for the purpose of collecting a debt using an "automated system" without consent—which is no longer allowed under the TCPA's "automatic telephone dialing system" restrictions after *Barr*—or an "automated" political call to a Florida consumer (among other subject matter) is perfectly legal under the FTSA on its face. Yet, a call for the purpose of selling a consumer good or service to that same person while using the same "automated system" without consent is illegal on its face. Put differently, Section 8(a) regulates a specific type of caller, subject matter and recipient—a salesperson making a sales call about consumer goods or services to a consumer—while all other types of calls can be made with an "automated system" with impunity. As in *Barr*, "that is about as content-based as it gets." 140 S.Ct. at 2346-47. Consequently, this Court should rule that Section 8(a) is a content-based restriction on speech.

Moreover, "[c]ontent-based laws—those that target speech based on its communicative content [like Section 8(a) does]—are presumptively unconstitutional"

and, as such, are subject to "strict scrutiny" review and "may be justified [under the First Amendment] only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163; *see also Barr*, 140 S.Ct. at 2347.[5] And in this regard, well before the recent amendments to Section 8(a) of the FTSA, two similar state statutes were struck down by two federal courts applying strict scrutiny. *See Gresham*, 198 F. Supp. 3d at 973; *Cahaly*, 796 F.3d at 406.

In 2015, the Fourth Circuit invalidated a South Carolina state statute prohibiting "unsolicited consumer telephone calls"—the definition of which was closely analogous to the FTSA definition of "telephonic sales calls" —and political calls. *Cahaly,* 796 F.3d at 402. Applying strict scrutiny, the Fourth Circuit struck down that part of the analogue statute on the basis that it was not narrowly tailored and "suffers from underinclusiveness because it restricts two types of robocalls—political and consumer—but permits 'unlimited proliferation' of all other types." *Id.* at 406.

Then, in 2016, a federal district court struck down a similar Arkansas state statute, which prohibited the use of an autodialer to place calls offering goods or services or in connection with a political campaign. *Gresham,* 198 F. Supp. 3d at 972-73. Also applying strict scrutiny there, the district court held that the statute was underinclusive because "no limit [wa]s placed" on other types of calls "that also may

---

[5] The First Amendment to the U.S. Constitution is coextensive with Florida constitutional guarantee of free speech. *Cafe Erotica v. Fla. Dep't of Transp.,* 830 So.2d 181, 182–83 (Fla. 1st DCA 2002).

intrude on residential privacy." *Id*. at 972. The court in *Gresham* did so despite the Attorney General's submission of evidence that she had received no consumer complaints regarding charity robocalls and few consumer complaints regarding debt collection robocalls. *Id.* at 971-72. The court reasoned that, "[i]f the interests of privacy and safety warrant restriction of automated calls made for a commercial purpose or in connection with a political campaign, they also warrant restriction of other types of automated calls." *Id.* at 972.

Additionally, in *Barr*, the amendment to the TCPA's automated calling provision at issue, which carved out an exemption for automated calls made to collect a government debt, failed strict scrutiny because the government "ha[d] not sufficiently justified the differentiation between government-debt collection speech and other important categories of robocall speech, such as political speech, charitable fundraising, issue advocacy, commercial advertising, and the like." 140 S.Ct. at 2347. The FTSA likewise fails to justify the differentiation between consumer "telephonic sales calls" and any other categories of speech. Thus, these directly on-point authorities suggest that Section 8(a) is appropriately examined under "strict scrutiny" as a content-based restriction on speech. This Court should do so in this instance.

> ### a.   Section 8(a)'s Content-Based Speech Restriction Fails "Strict Scrutiny" Review.

To survive a strict scrutiny analysis, the Government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that

interest." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S.Ct. 2806, 2817 (2011) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). The state of Florida bears the burden to demonstrate that Section 8(a)'s differentiation between "telephonic sales calls" and other types of calls furthers a compelling governmental interest and is narrowly tailored to that end. *Id.*; *Reed*, 576 U.S. at 171. The State cannot meet its heavy burden here.

Omitted from the statute and legislative history is either purpose or justification for limiting the application of Section 8(a) to "telephonic sales calls" to consumers about "consumer goods and services" made using an "automated system," as opposed to other automated calls (*e.g.*, political). Rather, the FTSA's legislative history reflects the Florida legislature's discussion of consumer complaints about unwanted calls in general**,** including calls made using an autodialer to play a recorded message and spoofed calls regardless of content, as well as unwanted telemarketing calls regardless of how they are made (*e.g.,* manual calls). However, the history does not articulate the reason behind regulating only "telephonic sales calls" rather than *all* calls made using an "automated system for the selection or dialing of telephone numbers."[6]

Even assuming *arguendo* that the Florida legislature identified a specific purpose or motivation behind limiting the FTSA as it did—such as concerns about

---

[6] *See* Florida Senate Bill Analysis and Fiscal Impact Statement for CS/SB 1120 (hereinafter "FIS") at 2, available at https://www.flsenate.gov/Session/Bill/2021/1120/Analyses/2021s01120.rc.PDF.

protecting "consumer" privacy, preventing "automated" calls to "consumers" generally, or even just eliminating "unwanted" calls even if manual—Section 8(a) is not narrowly tailored to serve any such interest. "A statute is narrowly tailored if it targets and eliminates **no more than the <u>exact</u> source of the 'evil' it seeks to remedy.**" *Frisby v. Shultz*, 487 U.S. 474, 485 (1988) (emphasis added) (citing *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 808-10 (1984)). But the text of the FTSA is <u>not</u> focused on an "exact source of evil" to be remedied; instead, it is both underinclusive and overinclusive and, as such, fails a strict scrutiny review.

The Supreme Court has held that legislation that is "underinclusive" or leaves injuries to the government's purported interest unprohibited is not narrowly tailored. *Reed*, 576 U.S. at 171-72. Along those lines, Section 8(a) is underinclusive, and therefore not narrowly tailored, because it still permits many types of unwanted calls. For example, Section 8(a) does nothing to limit any other category of unwanted automated calls (like political calls made during election seasons) and still permits unwanted "telephonic sales calls" that are not made with an "automated system for the selection or dialing of telephone numbers." Further, unlike the analogous provision of the TCPA, which prohibits "*<u>any</u>* call" made using an ATDS other than emergency calls or with the prior express consent of the called party (47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added)), the FTSA prohibits only automated "telephonic sales calls," which is defined and limited to include only calls to consumers about

consumer goods or services. *See* Fla. Stat. § 501.059(1)(j). Thus, calls to consumers or businesses about non-consumer goods or services, or to businesses about consumer goods or services, utilizing the same "automated" system are permitted. In short, rather than prohibiting <u>all</u> autodialed calls on <u>all</u> topics (except for emergency calls, which are indisputably a "compelling state interest") like the TCPA, the FTSA "singles out [telephonic sales calls regarding consumer goods or services] for differential treatment." *Reed*, 576 U.S. at 169; *see also Cahaly*, and *Gresham*, *supra* (applying strict scrutiny and striking down similar calling statutes as underinclusive).

Finally, in addition to leaving many types of unwanted automated calls unrestricted (which makes it <u>under</u>inclusive), if Section 8(a) was actually motivated by consumer protection or privacy concerns against unwanted calls generally or even against specific types of unwanted calls, it is simultaneously <u>over</u>inclusive because it unnecessarily restricts calls consumers may have actually wanted or expected. For example, a consumer could contact a business about the purchase of a consumer product and ask to be called back but not provide their "prior express written consent" within the meaning of the FTSA's definition of that term. *See* Fla. Stat. § 501.059(1)(g). Alternatively, the consumer could provide that business with their "prior express written consent" within the meaning of the ***TCPA***—which seemingly has different requirements than its Floridian counterpart. *See* 47 C.F.R.§ 64.1200(f)(9). The end result is that the consumer either does not receive a clearly

desired call just because his or her consent did not meet the onerous requirements of the statute or the business takes the risk of possibly violating the FTSA in using an "automated system" to call the consumer. Either way, these examples demonstrate that Section 8(a) is overinclusive and not "narrowly tailored" to achieve any compelling government interest. Thus, because Section 8(a) is a presumptively unconstitutional content-based restriction that does not withstand strict scrutiny, the FAC should be dismissed in its entirety under Rule 12(b)(6).

### b. Section 8(a) Also Does Not Survive "Intermediate Scrutiny" Review.

All American anticipates that, in response to this motion, Plaintiff may argue that only "intermediate scrutiny" should apply, at most, to the extent Section 8(a) involves restrictions on "commercial" speech. That argument fails, however, because Section 8(a) does not survive intermediate scrutiny review in any event.

Under intermediate scrutiny, speech which is "neither misleading nor related to unlawful activity" may be restricted if there is (i) a "substantial" state interest, (ii) "the regulation directly advances the governmental interest asserted" and (iii) the regulation "is not more extensive than is necessary to serve that interest." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980). The State also bears the burden of meeting this standard. *See FF Cosms. FL, Inc. v. City of Miami Beach,* 866 F.3d 1290, 1299 (11th Cir. 2017).

As discussed above, there is nothing in the FTSA's legislative history or the

text of the statute itself suggesting there is any particular state interest, let alone a substantial state interest, that the recent amendments were designed to address; and, even if there were some generalized interests in protecting consumers from unwanted automated calls or preserving consumer privacy, Section 8(a) is both under- and overinclusive in advancing such interests. Indeed, there are a variety of "unwanted" calls not covered by Section 8(a) (*e.g.,* debt collection calls, scam calls, non-sales calls, political calls, and non-consumer sales calls that do not fit the definition of a "telephonic sales call" that can be made in automated fashion, without consent and without recourse), and a variety of "wanted calls" that are covered when they should not be (*e.g.,* where the consumer provides consent to be contacted but not "prior express written consent" within the meaning of the FTSA). Accordingly, even if the Court applies intermediate scrutiny here, Section 8(a) remains unconstitutional.

**B.    THE FAC SHOULD ALSO BE DISMISSED BECAUSE THE FTSA IS UNCONSTITUTIONALLY VAGUE.**

The Fifth Amendment to the U.S. Constitution (applicable to the states vis-à-vis the Fourteenth Amendment) provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." *Johnson v. United States*, 576 U.S. 591, 595 (2015).[7] This guarantee is violated when a law is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless

---

[7] The due process guarantees of the Fourteenth Amendment are coextensive with those of Florida's Constitution. *Bonavista Condo. Ass'n, Inc. v. Bystrom,* 520 So.2d 84, 86 (Fla. 3d DCA 1988).

that it invites arbitrary enforcement." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012).

Along those lines, the FTSA prohibits telephonic sales calls made using "an automated system for the selection or dialing of telephone numbers or the playing of a recorded message[.]" Fla. Stat. § 501.059(8)(a). However, Section 8(a) does not define this phrase or the key words in it. Instead, the FTSA's statutory language and legislative history have used various terms to describe the technology regulated. For example, the legislative history uses the phrases "automated machine," "automated dialer," "automatic telephone dialing system," and "autodialer" seemingly interchangeably and without consideration to possible different meanings, sometimes conflating them into a singular "technology." FIS at 1-2. Further, prior to the amendments, the FTSA used different phrases throughout, even in the same sections:

> (8)(a) No person shall make or knowingly allow a telephonic sales call to be made if such call involves an ***automated system for the selection or dialing of telephone numbers or the playing of a recorded message*** when a connection is completed to a number called.
>
> (b) Nothing herein prohibits the use of an ***automated telephone dialing system*** with live messages if the calls are made or messages given solely in response to calls initiated by the persons to whom the ***automatic calls*** or live messages are directed.

Fla. Stat. § 501.059(8)(a)-(b) (2018) (emphases added). *See also The Dream Defenders v. DeSantis*, 2021 WL 4099437, at *20 (N.D. Fla. Sept. 9, 2021), *appeal filed*, No. 21-13489 (11th Cir. Oct. 13, 2021) (noting that "even a commonly

understood word may be rendered ambiguous by the language surrounding it"). Also confusing matters is that the Florida legislature seeks to further amend Section 8(a), but still without defining any of the key terms within, to govern "automated system[s] for the selection *and* dialing of telephone numbers"—which would apply retroactively. *See* https://www.flsenate.gov/Session/Bill/2022/1095/BillText/c1/PDF (last visited Feb. 4, 2022) (emphasis added). As such, it is completely unclear what equipment or technology constitutes an "automated system" under Section 8(a)—past, present, or future.[8] Thus, it is impossible for a caller to know whether they are using equipment regulated by the FTSA and, accordingly, whether or not they must comply with the FTSA's requirements applicable to such calls. Instead, businesses can only guess at their peril as to what dialing equipment is legal. The statute is open to inconsistent judicial interpretations and arbitrary enforcement, and accordingly, its unmitigated existence threatens to chill protected speech. Therefore, the Court should declare Section 8(a) unconstitutionally vague and dismiss the FAC on this basis, too.

## C.   THE FAC SHOULD ALSO BE DISMISSED BECAUSE THE FTSA VIOLATES THE COMMERCE CLAUSE.

The FTSA also violates the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3, because it impermissibly regulates commerce that occurs wholly outside of Florida. "The Commerce Clause grants to Congress the power to regulate interstate

---

[8] It is also telling that other autodialing statutes provide definitions for covered technology like the TCPA. *See, e.g.,* N.Y. Gen. Bus. Law § 399-p(a); 815 ILCS 305/5(a); Wash. Rev. Code § 80.36.400(1)(a). That the FTSA does not have such a definition further shows its vagueness.

- 17 -

and foreign commerce." *Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1243 (11th Cir. 2012) (citing U.S. Const. art. I, § 8, cl. 3). "[T]his affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the States to enact legislation affecting interstate commerce." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 326 n.1 (1989). "[A] state law that has the 'practical effect' of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause." *Id*. at 332. Indeed, a state's power to enact substantive legislation is limited and "[a]ny attempt 'directly' to assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Edgar v. MITE Corp.*, 457 U.S. 624, 643 (1982) (citations omitted). Thus, "[s]tatutes that have the practical effect of controlling conduct beyond the boundaries of the state are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech Sys., Inc. v. McCollum*, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (citing *Healy*).

*TelTech Sys., Inc. v. McCollum* is instructive here. There, the court found that a Florida law prohibiting persons from causing false caller ID information to be displayed to call recipients "had the practical effect of regulating commerce that occur[red] wholly outside the state of Florida" and thus violated the Commerce Clause because it "[wa]s impossible for [the plaintiffs] to determine whether the recipient of a call [wa]s in Florida"; therefore, "[t]he logical consequence of this impossibility

[wa]s that [the plaintiffs] [we]re unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id.* at *8.[9]

The same logical consequence follows from the FTSA, which defines "telephone solicitor" as "a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, ***doing business in this state***, who makes or causes to be made a telephonic sales call." Fla. Stat. § 501.059(1)(i) (emphasis added). "Doing business in this state" includes "businesses that conduct telephonic sales calls from a location in Florida ***or from other states or nations to consumers located in Florida***." *Id.* § (1)(e) (emphasis added). There is a rebuttable presumption "that a telephonic sales call made to any area code in this state is made to a Florida resident or to a person in this state at the time of the call." *Id.* § (8)(d).

As in *TelTech Sys., Inc. v. McCollum*, "the increased use of mobile phones and call forwarding" makes it impossible for callers to be certain that the party they are calling is not located in Florida. 2009 WL 10626585, at *2. For example, a business located in California might place a "telephonic sales call" using an "automated system" to a telephone number with a New York area code, but the call recipient may be located in Florida. That business would be liable for violating the FTSA even if

---

[9] *See also SpoofCard, LLC v. Burgum*, 499 F. Supp. 3d 647, 656 (D.N.D. 2020) (finding state anti-spoofing statute "effectively regulates how [p]laintiffs engage in their interstate commerce" in violation of the dormant Commerce Clause because it was impossible to determine the location of the call recipient; therefore, "[p]laintiffs must either conduct all of their business in a certain way to avoid liability in North Dakota or, more likely, cease spoofing altogether").

they had no way of determining the call recipient's actual location. *Id*. at *8. Similarly, because the FTSA presumes that all calls to Florida area codes are made to Florida residents or individuals located in the state, businesses must presume that all calls to Florida area codes are subject to the FTSA even if the call recipient might actually receive the call in another state. Consequently, the FTSA makes it impossible for businesses to make sales calls to consumers anywhere in the country without risk of liability under this Florida statute, effectively requiring those businesses to comply with the FTSA for all such calls. This result renders the FTSA unconstitutional under the dormant Commerce Clause. *See Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14-16 (W.D. Wash. Mar. 30, 2015) (declining to certify class under Washington statute, which included all calls made to telephone numbers with Washington area codes, because "the fact that a number with a Washington State area code was dialed does not necessarily mean that the call was received in Washington State" and permitting the statute to apply to calls initiated and received outside the state "would render the [statute] unconstitutional under the dormant Commerce Clause").[10] In sum, the FTSA "ha[s] the practical effect of regulating commerce that occurs wholly outside the state of Florida" in violation of the dormant Commerce Clause. *TelTech*

---

[10] The Florida legislature recognized this potential consequence, as well. *See* FIS at 10 (citing *TelTech Sys., Inc. v. McCollum* and noting: "It is unclear whether the bill's presumption regarding Florida area codes will have an effect on interstate commerce to an extent that has the practical effect of regulating commerce outside of Florida's borders.").

*Sys., Inc. v. McCollum*, 2009 WL 10626585, at *8. Plaintiff's FAC should, therefore, be dismissed under Rule 12(b)(6) for this additional reason.

Lastly, Plaintiff's FAC interjects new allegations that are seemingly designed to avoid having the FTSA declared unconstitutional under the dormant Commerce Clause. *See* FAC ¶¶ 47-56. But Plaintiff cannot plead his way out of this constitutional challenge. These additional allegations do not change the fact that the FTSA violates the First and Fourteenth Amendments of the U.S. Constitution for all the reasons discussed above; and, in any event, Plaintiff's ***factual*** allegations in his FAC (old and new) are irrelevant to the ***facial*** constitutionality challenges presented here. *See, e.g., Harris,* 564 F.3d at 1308.

## D. THE FAC SHOULD ALSO BE DISMISSED FOR FAILURE TO STATE A CAUSE OF ACTION.

Given the recent amendments and the newly enacted private cause of action, there is little applicable case law on the FTSA. However, "Florida courts often look to federal decisions as a guide to interpreting state statutes that are similar to federal ones." *Martinolich v. Golden Leaf Mgmt., Inc.,* 786 So.2d 613, 615 (Fla. 3d DCA 2001) (citations omitted). Thus, this Court may apply instructive TCPA authorities.

In this regard, Plaintiff's sparse allegations regarding All American's supposed use of an "automated system"—like the rest of his pleading—are conclusory and unsupported by specific facts. Courts in the Eleventh Circuit (including in this District) and elsewhere have widely recognized that baldly alleging use of an

"automated telephone dialing system" ("ATDS" or "autodialer") and parroting the law is not enough to state a plausible TCPA claim or to avoid dismissal under Rule 12(b)(6). *See, e.g., Turizo v. Jiffy Lube Int'l, Inc*., 2019 WL 4737696, at *3 (S.D. Fla. Sept. 27, 2019) (allegations merely "echoing statutory language defining an ATDS" are insufficient to allege defendant used an ATDS).[11] Such is true here. Indeed, Plaintiff's sparse allegations regarding All American's supposed use of an "automated system" are conclusory, speculative, and mostly parrot the statutory language nearly verbatim without requisite supporting facts. *See, e.g.,* FAC ¶ 3 ("All American uses automated systems to make outbound telemarketing calls"); ¶¶ 13-15 (speculating a specific brand of "autodialer" was used); ¶ 45 ("Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers."). Such allegations do not meet federal pleading standards. *See also Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1337 (11th Cir.2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible.").

Moreover, the FTSA prohibits unauthorized "telephonic sales calls" made with

---

[11] Judges in this District have consistently dismissed on this same basis. *See, e.g., Gill v. Navient Sols., LLC,* 2018 WL 7412717, at *1 (M.D. Fla. Aug. 7, 2018); *Bonanno v. New Penn Fin.,* 2017 WL 3219517, at *6 (M.D. Fla. July 28, 2017); *Weaver v. Wells Fargo Bank N.A*., 2015 WL 4730572, at *3 (M.D. Fla. Aug. 10, 2015); *McGinity v. Tracfone Wireless, Inc*., 5 F. Supp. 3d 1337, 1340 (M.D. Fla. 2014); *Fleming v. Diversified Consultants, Inc.,* 2014 WL 6747150, at *1 (M.D. Fla. Nov. 26, 2014); *Hunter v. Diversified Consultants, Inc.*, 2014 WL 6747153, at *1 (M.D. Fla. Nov. 26, 2014); *Speidel v. JP Morgan Chase & Co.,* 2014 WL 582881, at *2 (M.D. Fla. Feb. 13, 2014).

"an automated system for the selection or dialing of telephone numbers." Fla. Stat. § 501.059(8)(a). The term "automated system" is not defined in the FTSA, which makes the statute unconstitutionally vague (*see* Section IV.B., *supra*); however, if the Court moves past the constitutionality inquiry to ascertain the sufficiency of the allegations in Plaintiff's FAC on this element, then it is left with the language of the statute itself. "The polestar of a statutory construction analysis is legislative intent." *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So.3d 1, 8 (Fla. 2012). To determine legislative intent, courts look first to the plain meaning of the pertinent language, "which a court may discern from a dictionary." *Id.*; *see also State v. Weeks*, 202 So. 3d 1, 7 (Fla. 2016). The plain meaning of the term "automate[d]" is "to operate or control by automation."[12] "Automation" means "the technique, method, or system of operating or controlling a process by highly automatic means, as by electronic devices, reducing human intervention to a minimum."[13] Thus, if the Court finds the phrase "automated system" is not ambiguous (though it is, for many reasons),[14] one possible interpretation is that "automated system" in the FTSA means technology that dials numbers without ***any*** human intervention at all.[15] If so, this too would be fatal to Plaintiff's FTSA claim.

---

[12] *See* https://www.dictionary.com/browse/automate (last visited Feb. 4, 2022).

[13] *See* https://www.dictionary.com/browse/automation (last visited Feb. 4, 2022).

[14] If the language of a statute is "clear and unambiguous and conveys a clear and definite meaning," courts apply the plain meaning and need not "resort to the rules of statutory interpretation and construction." *W. Fla. Reg'l Med. Ctr., Inc.*, 79 So. 3d at 9.

[15] This interpretation is consistent with how courts (including those in this District) analyzed and applied the definition of an ATDS under the TCPA, prior to the U.S. Supreme Court's recent decision on the definition of an ATDS in *Facebook v. Duguid* (which is further discussed below).

As applied here, Plaintiff does not allege facts suggesting the calls at issue were sent without any human intervention. Numerous courts applying the FTSA's federal counterpart have dismissed complaints where the plaintiff did not plead sufficient facts suggesting there was no human intervention involved in placing the at-issue calls. *See, e.g., Glasser*, 948 F.3d at 1304–05 ("[B]ecause the phone system in Glasser's appeal required human intervention and thus was not an auto-dialer, the [TCPA] does not cover them."). *See also* fn. 15, *supra* (citing various other cases ruling similarly). Thus, if the defining characteristic of an "automated system" is the total <u>lack</u> of human intervention in dialing numbers, Plaintiff's FTSA claim fails.

Further, courts applying the Supreme Court's recent interpretation of the TCPA (*i.e., Facebook v. Duguid*, 141 S. Ct. 1163 (2021)) have widely held that the touchstone of an "automatic telephone dialing system" is not whether it dials numbers or even "selects" numbers automatically from a pre-produced list, but rather whether the system ***generates*** numbers to be dialed, either randomly or sequentially (*i.e.,* that a random or sequential number generator was actually used to place the calls).[16]

---

*See, e.g., Wilcox v. Green Tree Servicing, LLC,* 2015 WL 2092671, at *5 (M.D. Fla. May 5, 2015); *Martin v. Allied Interstate, LLC,* 2016 WL 3619684, at *9 (S.D. Fla. June 17, 2016); *Pozo v. Stellar Recovery Collection Agency, Inc.,* 2016 WL 7851415, at *3 (M.D. Fla. Sept. 2, 2016); *Glasser v. Hilton Grand Vacations Co., LLC*., 341 F. Supp. 3d 1305, 1308 (M.D. Fla. 2018), *aff'd sub nom. Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020).

[16] While some courts have reached different conclusions, this represents a growing majority view of the proper definition of an ATDS under the TCPA. *See, e.g., Wilson v. Rater8, LLC, et al.,* 2021 WL 4865930, at *2–3 (S.D. Cal. Oct. 18, 2021); *Gross v. GG Homes, Inc.,* 2021 WL 4804464, at *3 (S.D. Cal. Oct. 14, 2021); *Anyaebunam v. ARS Account Resolution, LLC, et al*., 2021 WL 4775146, at *3 (D.N.J. Oct. 13, 2021); *Samataro, et al. v. Keller Williams Realty, Inc., et al.,* 2021 WL 4927422, at *4 (W.D. Tex. Sept. 27, 2021); *Guglielmo v. CVS Pharmacy, Inc.,* 2021 WL 3291532,

While one could speculate the "automated" nature of the "systems" under both schemes also implies there must be some measure of "randomness" to qualify, which would also be a reasonable interpretation if the FTSA and TCPA are coextensive, Florida courts and its legislature have not yet opined on this issue. Regardless, assuming *arguendo* that the Court finds that the TCPA and FTSA are coextensive, whether a "bloop" or some other sound was heard during a call—which is <u>all</u> that Plaintiff alleges here, at best, *see* FAC ¶¶ 13-14—has nothing to do with whether a random or sequential number generator was used (let alone if the call was "random"), which is now the standard for pleading an ATDS under the TCPA, as noted above. This too warrants dismissal here.

## E.   <u>THE COURT'S DISMISSAL SHOULD BE WITH PREJUDICE.</u>

Lastly, dismissal with prejudice is appropriate where amendment would be futile because "a more carefully drafted complaint could not state a claim." *Silberman v. Miami Dade Transit,* 927 F.3d 1123, 1137 (11th Cir. 2019). Because Plaintiff brings his claims pursuant to facially unconstitutional sections of the FTSA, no amendment could salvage his claim. As such, the FAC should be dismissed with prejudice.

## V.   <u>CONCLUSION</u>

For all these reasons, Plaintiff's FAC must be dismissed <u>with prejudice</u>.

---

at *2 (D. Conn. Aug. 2, 2021); *Barry v. Ally Fin., Inc.,* 2021 WL 2936636, at *4–7 (E.D. Mich. July 13, 2021); *Tehrani v. Joie De Vivre Hospitality, LLC*, 2021 WL 3886043, at *6–7 (N.D. Cal. Aug. 31, 2021); *Borden v. eFinancial, LLC*, 2021 WL 3602479, at *5–6 (W.D. Wash. Aug. 13, 2021).

Dated:          February 4, 2022                    Respectfully Submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440

By: *s/ Yaniv Adar*
    Josh A. Migdal, Esq.
    Florida Bar No. 19136
    josh@markmigdal.com
    Yaniv Adar, Esq.
    Florida Bar No. 63804
    yaniv@markmigdal.com
    eservice@markmigdal.com

*Attorneys for Defendant All American*
*Power and Gas PA, LLC*

## REQUEST FOR HEARING

Pursuant to Local Rule 3.01(h), Defendant respectfully requests oral argument to address the instant Motion. The Motion involves novel issues of first impression as to the application of the First and Fourteenth Amendments of the U.S. Constitution (and Florida corollaries) and the dormant Commerce Clause of the U.S. Constitution to recently-enacted provisions to a Florida statute, particularly in light of recent Supreme Court precedent, and the application and interpretation of said statute. Oral argument will be beneficial to the resolution of these issues. Defendant anticipates that this hearing will last approximately 1 hour.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 3.01(g), the undersigned certifies that counsel for Defendant conferred in good faith with counsel for Plaintiff regarding the substance of the foregoing Motion on December 30 and 31, 2021 via email. The parties were unable to reach an agreement and, thus, the Motion is opposed.

/s/ Yaniv Adar
Yaniv Adar

## CERTIFICATE OF SERVICE

The undersigned certifies that, on  February 4, 2022, the foregoing was filed electronically. Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

/s/ Yaniv Adar
Yaniv Adar